Good morning everyone. We're here on Senn versus the Attorney General and sitting with me at the bench is Judge Krause and we have Judge Greenberg participating by phone. Yes, I'm here. Good morning. Good morning. So I guess we can start the argument then and I'll wait here for Mr. Bratton. Thank you. May it please the Court, I'm Scott Bratton on behalf of the petitioner Ms. Senn in this case. I'd like to reserve five minutes for rebuttal if I could. That'd be granted. Thank you. The incident case presents a question involving the interplay of numerous statutes and regulations. Ms. Senn has contended throughout the proceedings with the agency that she's eligible to adjust status in two ways. One, through the approved I-130 petition filed by her mother, who is now a U.S. citizen, and she obtained that status through the Kay petitioner. And second, Ms. Senn argued that like Kay, too, she's eligible to adjust status as the direct result of her mother's marriage to a United States citizen. You've asked us to void that portion, that regulation, and you've asked us to do it using Chevron Step 1, correct? Yes. Are you familiar with our court's decision in Zhang where we looked at 1255A, found it to be ambiguous, and moved to Chevron Step 2? Yes. So if you can just give me a second, if Subsection D is a limitation or modifier of A, and we've already found A to be ambiguous and need to move on to Chevron Step 2, why shouldn't we have to go to Chevron Step 2? Well, I think in this case, I think the language of D is clear as far as what it precludes and what it doesn't preclude. And I think that in looking at the plain language of Subsection D, it relates to the actual marriage itself. It doesn't talk about the relationship between the child and the stepparent. It talks about adjustment of status based on the qualifying marital relationship. So that would be our argument. And we also argue in the alternative that under Chevron Step 2 that we would prevail as well and argue that the regulation is arbitrary and capricious in light of the overall scheme of K visas and the way that Ks come to the United States. So we would argue that if we do get to Step 2, that we would still prevail. What portion then of D in your judgment would be unclear to get us to Step 2? I don't think it is unclear, but I think if you find that it is, then it would be with relationship to the marriage and what the requirements for adjustment are with respect to a child in this case. I think if it's unclear, it would have to be that. Like I said, I don't think that it is unclear. I think it's written very clearly as the Seventh Circuit addressed in the Akron decision. However, if it is, it would likely be with respect to that. And we would submit that that particular regulation that we discussed in our brief, 245.1i, is inconsistent with the overall structure of K visa adjustment of status cases. What is the significance of the provision that her relationship with her stepdaughter was based on the fact that she was under 18, except she wasn't, of course, at the time of the marriage? What's the significance of the age of 18 then? Well, the age of 18 relates to I-130 petitions. Yes. She was eligible to come to the United States as a K-4 because of the way that the child is defined in K-4. It's related to her relationship to her natural parent versus the K petitioner. However, for purposes of the I-130, the I-130 defines it differently. It goes to the definition of child, and the I-130 relates to the step-parent relationship to the child. And in this case, she could never have an I-130 approved based on her relationship to her step-parent because she was over 18 years old at the time. And our argument is that not allowing her to adjust status either through her mother's petition or through like a K-2 is inconsistent with the legislative history, is inconsistent with the language of the statute. Why does it follow the mere fact that she's able to get a visa to come to the United States means that she's able to adjust her status? I mean, they're separate things. I understand, but the whole purpose of enacting the K visa classification was to allow family members to come to the United States to await immigrant visa processing. In the board's ACRM decision, they specifically state that K-3 and K-4 visas are a speedy mechanism for spouses and minor children of USCs to obtain their immigrant visas in the United States rather than waiting overseas. Why would Congress enact a structure that would allow a K-4 to come to the United States and not be able to stay? As soon as the K-3 adjusts status, then the K-4 is out of status. Isn't that, though, how the I-130 worked before the LIFE Act? In other words, there could still be by the alien parent an I-130 filed, but their own application would need to be granted first for them to have at least conditional LPR status and seek I-130 adjustment for their 18 to 21-year-old child who would not yet be in the United States on a non-immigrant or immigrant visa. As far as the I-130 goes for the immediate relatives, in I-130 there is no derivative for an immediate relative. However, in the board's decision in CSA, they recognize that as well and still allowed adjustment for K-2s despite the fact that they weren't immediate relatives, that they could be between the age of 18 and 21 at the time that the relationship was created, the step-child relationship was created. But to the extent you're asking us to interpret this to have an automatic adjustment the same way as a K-2, doesn't that really expand the criterion for eligibility under the Act? Because previously the 18 to 21-year-old would need to wait in their home country for approval of an I-130 by the alien parent. In doing that, a couple of things. Congress recognized that these individuals shouldn't be required to wait, but why have them come into the United States for an immigrant visa that they're never eligible for here? It doesn't make any sense, and that's what the Akron case discussed as well. Additionally, with respect to K-2 adjustment of status cases, we would submit that this is similar to that particular situation. It's not automatic adjustment because the mom still has to adjust as a result of the marriage to the step-parent. So we're not advocating for automatic adjustment. What we're saying is that the adjustment of status is based on the parent. The parent has to have an approved I-130. And that goes to the marriage fraud provisions that change the categories or change the structure of how Ks adjust. And there's no marriage fraud purpose here for not allowing Ms. Sen to stay in the United States and adjust status. She came to the United States on a visa that she was going to have to leave as soon as her mom adjusted status. I don't believe that Congress could have possibly intended for that to be the result of this particular case. I want to ask you this. On the bottom of page A-4 in the appendix, on the bottom of the page of the first page of the opinion of the Board of Immigration Appeals, it recites the following. On appeal, and that means on appeal to which the respondent, of course the respondent is Jen. Then it says, concedes that under matter of ACROM, and that is the Board's opinion, not the Seventh Circuit's opinion, a K-4 nonimmigrant cannot adjust status without demonstrating visa eligibility as a beneficiary of an I-130 petition filed by her step-parent. Is that statement true that you conceded that? We didn't. What was conceded wasn't that we believe that's a correct interpretation of the law. What was conceded in the brief to the Board was that this was the Board's interpretation. So we were essentially arguing that the Board's interpretation was wrong, knowing that the Board wasn't going to change its interpretation because they had a published decision on point and that they were bound by the regulation 245.1i. So it wasn't a concession that that's correct. It was a concession that this was what the Board's holding was in matter of ACROM. So we would have to overrule the Board's opinion in ACROM to grant you the relief you want. That is correct, and that is what we've requested. In fact, the Seventh Circuit overruled the Board's decision in ACROM and stated that it's inconsistent with the statutes, the interplay between the multiple statutes at issue in this case, and it's inconsistent with the Life Act. And we believe that for the reasons that we set forth in our briefs, that it is inconsistent with the applicable statutes, and it doesn't comport with a plain reading of provisions of the Immigration and Nationality Act. Why would Congress then have made it impossible for the stepparent, in this case the husband, to file a I-130 petition on behalf of Jen because she was over 18? Why would they have done that? They must have had something in mind. Well, the definition of child in the I-130 process was in place before the K-3, K-4 classification. But it's still there, isn't it? It is still there at this point, and I believe that in looking at the overall classification, Congress clearly anticipated that when these Ks come to the United States, including K-3s and K-4s, they're coming here to adjust status. That's the whole purpose of them coming. It serves no purpose for them to come if they cannot adjust status. And that's a large part of the argument that we made, that it's entirely inconsistent with congressional intent to not allow someone in this sense position to adjust status in the United States. Don't we have to disregard the statutory provision of the 18 cutoff? Could you repeat that? I couldn't hear that, Your Honor. I can understand that. Don't we then have to disregard what Congress wrote about the 18-year setoff when you reach your 18th birthday? We have to say it doesn't apply? No, we do not have to ignore that. Well, with respect to our argument in this case, number one, we do have an approved I-130 petition filed by the step-parent. The I-130 has to be filed by a step-parent is a regulatory provision with respect to the limitations on K-4 adjustment of status, and that's a regulation that we're challenging. But if we get to the second stage of Chevron, you have sort of a hole in the statute, and this is the way it was filled by regulation. Don't we then bound by that? I mean, can we set aside the regulation? I know the Court of Appeals did in Chicago, but nevertheless, we're not bound by that. But aren't we bound by the regulation? Well, the regulation is not reasonable in light of, number one, it doesn't flow from the statute. The statute talks about the statute at issue discusses a qualifying marriage. It talks about adjustment as a result of the marriage of the non-immigrant to the citizen who filed the petition. Going beyond that and saying this precludes adjustment unless the step-parent files for the child is beyond the intent of the statute. And clearly it's beyond the intent of the whole K-Visa classification when it was enacted in the Life Act. So I believe that the regulation is invalid for the reasons I've set forth today and the reasons that I've set forth in my briefs. What do you make of the fact that the Technical Corrections Act was passed just shortly after the agency promulgated the K-6 gap filler for K-2 visa holders? And the Life Act, of course, was passed many years later, but with the backdrop of the K-6 gap filler regulation. Yeah, I mean, I don't think that makes a difference in our argument. As far as the technical corrections in 1988, they were to relate back to the 1986 as if they were in the MFA provisions to begin with. And I think all that they're trying to do is say in order for the parent who's married to the spouse to adjust status, they have to actually marry the parent. And that's all to deter marriage fraud. That was part of the whole scheme that was set up to deter marriage fraud through MFA. And I think they recognize that just making them go through the conditional residence process wasn't enough that they enacted or they set forth this provision retroactive in order to make sure that the marriage actually does take place so that a K-1 doesn't come to the United States and immediately marry someone else to try to get their immigrant visa. Well, perhaps I misunderstood, but I thought it was part of your argument that the backdrop of the K-6 gap filler regulation for K-2 visa holders indicated that when Congress then passed the language that appears now in 1255D, initially with the Technical Corrections Act and then with the Life Act, that it should be deemed to incorporate and adopt the regulatory interpretation filling the gap so that 18 to 21-year-olds could adjust status on the basis of marriage. Yeah, I mean, that was a part of our argument with respect to that. Thank you. Yep. Okay, we'll get you back on rebuttal. Thank you. Thank you. Mr. Stalzer. Good morning, Your Honors. Counsel, may it please the Court, my name is Rob Stalzer. I'm here on behalf of Attorney General Lynch. Your Honors, I think you've drilled down on it. This is a statutory interpretation case. I believe it should be resolved at Chevron Step 1. That was our argument before, and we believe that the statute is unambiguous with respect to this petitioner and to other people like her. So you don't think Zhang plays any role? We could ignore a holding in Zhang about 1255A being ambiguous and drill down just to D? Yeah, we can drill down to D. We can also turn to Section 204. It's 1154, since we're talking about the 8 U.S.C. It tells us that to adjust, you must be an immediate relative, and it refers to children. And, of course, that relates back to 101B, which defines children to exclude stepchildren who are over the age of 18. What about minor child, though? Minor child comes up in 1255D. Doesn't look like that was unintentional. It's elsewhere. So isn't there a difference between minor child and child? There is. 1255D refers back to the K visa provision under 101A15K. There's no dispute that under the K provision that minor child includes unmarried children under the age of 21. Right, up to the age of 21. But, again, that's the nonimmigrant visa provision. We're talking about adjustment, which has a different requirement under 245A, subject to the restriction in 245D. 245A is nonmandatory language, right? That provides that the U.S. citizen may file a petition, but it doesn't say that that's exclusive and doesn't use mandatory language. It doesn't, but it's the only language by which she could adjust, because if you look in 245D, that does use the mandatory language. It says the Attorney General may not adjust that person. Would this case come out differently if Jen had been 17 at the time of the marriage? Yes, it would. She would have just adjusted like normal. Again, this problem arises only for stepchildren who are over the age of 18, Your Honor, at the time of the marriage. If she had been under 18, she would have adjusted like normal in the normal course of things. Well, I suppose it applies to children who are between 18 and 21. Correct. If she's 24, she's out. Correct. Because, again, she doesn't qualify as a child of her stepfather if she's over the age of 18. You know, I have to tell you, when I looked at this case, I saw, and I can understand the arguments and I can understand the statutes, there is a certain lack of reality about it. Because I read that there are 12 million illegal immigrants in the United States, and here's a woman who's trying to be legal, and because she's 19 instead of 17, she's not. I mean, it's that simple. But I suppose we really can't take that into account. We have to read the law. Well, Your Honor, in this case, Congress has specifically disfavored the stepchildren who are over the age of 18 at the time of the marriage. Where do you see that in the actual text of 1255D? Where is the plain language indicating an intent to treat the children between 18 and 21 differently than children under 18? Because they must adjust. And to learn how they must adjust, we then turn to 245A, which then says they must adjust person to a petition and demonstrate eligibility and availability. To do that, we turn to Section 204, which says that an immediate relative has to be a child or a spouse, and then we go to the definition of a child, which excludes her. Isn't that asking us to interpret this statute in a way that goes against the canon? We don't expect Congress to put elephants in mouse holes. You're essentially suggesting, if I understand it correctly, that although the criteria for eligibility appear to be listed in 1255D and 8A, and Congress didn't specify explicitly here that there is to be different treatment of minor children below or above age 18, that we should read in that that substantive change in the law, not as a result of the specified criteria for eligibility, but because of a process, the I-130 process. But it's not a change in law, Your Honor. At the time the Life Act was passed, Congress had already unambiguously stated its intent that they adjust under 245A, subject to the restriction in 245D, which excludes stepchildren. The 101B definition of child to exclude the stepchildren over the age of 18, that was not modified by the Life Act. Congress had to know. You don't dispute that a legal permanent resident can also file an I-130 on behalf of their alien child, right? Yes, they can. So all we're talking about is whether the Life Act, the purposes of which seem to be reunification of family, and also the prevention of fraud in the language that's here, are furthered by that difference. I'm glad you brought that up, Your Honor, because you just relies on it heavily. And I have to again point out, when we talk about reuniting families, Congress has disfavored and excluded stepchildren who are over the age of 18, at the time of their parents' marriage, from being immediate relatives. That was a longstanding law at the time of the Life Act. Why would we interpret the statute that way when the agency had already put on the books the gap-filler regulation that appears in K-6 for K-2 visa holders? Against that backdrop, isn't it appropriate for us to assume that when Congress shortly thereafter enacts the Technical Corrections Act and then years later reenacts substantially the same language, which takes its language that is very similar to the agency's own language, based upon marriage as a result of the marriage, that this is a focus on the marriage eligibility. There's nothing in this language about the relationship to the U.S. citizen step-parent. There is. Now, the K-2 gap-filler… Where is that language? In 245D, it specifically relates to the… It puts the alien who is a K, a 101A, 15K alien, in conditional status. Now, she doesn't have a conditional relationship with her natural mother. That's absurd. We know she has a relationship with her mother. The only conditional relationship that needs scrutiny here is the relationship with her stepfather. It would have been absurd for Congress to say, oh, no, we need to put you in conditional treatment because of the relationship with your mother. How is the stepchild's relationship not conditional? If the mother or alien parent doesn't have their I-130 approved, then on a derivative basis the child's is not conditional. Because I-130s are filed by individuals, not by marriages. Either the mother or the stepfather had to file it, but she doesn't have a conditional basis with her mother. Congress wouldn't need to scrutinize that relationship. She has a conditional relationship with her stepfather, and that's why 245D applies to her. I'm sorry, where is the conditional relationship language? It says, as a result of the marriage of the nonimmigrant, or in the case of minor child, the parent, to the citizen who filed the petition to accord that alien's nonimmigrant status under 1101A15K. Right before that language, it says that the attorney general may not adjust this person except of an alien lawfully admitted to the United States on a conditional basis. Yeah, and a conditional basis is we're going to give you an LPR presence, conditional, with a two-year look to make sure that marriage is solid. So we're not talking about conditional relationships here. We're talking about conditional status, and that same conditional status would be granted to the spouse or the child. Right, but if an LPR mother could petition on behalf of the child, why would that be put in conditional basis for a two-year-old? She's already an LPR mother. But the other problem with the LPR mom, and your adversary has talked about this, for this child is the fact that those visas are not necessarily immediately available, and so there's a problem under 1255A. That reading would make it inconsistent with or difficult under 1255A because they're not immediately available. The statutes provide that an LPR seeking to apply on behalf of their child faces a quota, so they're not immediately available, so I'm not sure that helps. But I would like to go back to what Judge Krause was asking about, which is we have this gap filler that was put in to deal with the K-1s and K-2s. The language of it demonstrates that an understanding by the agency that the goal of Congress was to have these visa holders be able to wait in the United States while they adjusted. What is the difference between K-2 visa holder children and K-4 visa holder children when in both circumstances the word minor child is being used, not child under 1101? Right. They come over in a different process. That's the difference is they come over on I-129 to apply, and they're treated differently. Let me put it this way. We're talking about essentially are these two substantially similar groups. We would not say that fiancees are similarly situated to spouses. They're two different things, and the Act defines the children in relation to their parents. So essentially what the petitioner is arguing is that the children are similarly situated even though their parents that they're defined in relation to in 101A-15K are not similarly situated, and that's why we can treat them differently. K-1s, K-2s, they're an anomaly in immigration law. The petitioner has said, look, they get favorable treatment that I don't. I want to be treated like them even though I'm not the son or daughter of a fiancee spouse. But the BIA has said we're going to treat the K-1s and K-2s as functional equivalents of immediate relatives, and as a result we're going to just forget the I-130 process, and we're going to allow them to automatically adjust but not go through the I-130 process. If we're going to treat fiancees and fiancees' children as functional equivalent of immediate relatives, how can you reconcile treating spouses and those children as something other than immediate relatives? They're not treated as other than immediate relatives. An immediate relative child does not include a stepchild over the age of 18. So but a functionally equivalent immediate child does include a stepchild under the age of 18. I'm sorry, under the age of 21 but older than 18. If I understand the thrust of your argument, Your Honor, it's that the K-1s, K-2s are getting treatment outside of the act, therefore petitioners should get treatment outside of the act. I'm asking how does the agency reconcile discharging its obligations, its regulatory obligations, and make that carry out the language of this statute? For K-3s, K-4s, by carrying it out explicitly, Congress has unambiguously expressed will that they adjust through 245A, subject to the restriction in 245D, which excludes children who are stepchildren over the age of 18. So a minor child is surplusage? Not for the purposes of the nonimmigrant visa, but we're not talking about that anymore. Now we're over on the adjustment side of things. So we're back to another point that was raised that you can get your nonimmigrant visa, come to the United States, but being told to leave so you can never adjust. How does that achieve the goal of family unification? It's not that they can never adjust, Your Honor. They can immigrate in the ordinary course. Let's remember here, most people immigrate through consular processing abroad. Some very select few got lucky, and Congress built in an exception for them. The exception in 2000 that Congress created, however, didn't fix the stepchild language, which you just referenced, for trying to reunite families. According to Congress, the stepchild over the age of 18 who doesn't have a relationship with the stepfather doesn't count. But the only reason that that does not apply to children of fiances is because the agency and the BIA have said so. In other words, asking Judge Schwartz's question, perhaps a slightly different way, if it's the agency's position that the plain language of 1255D and other parts of the statute, how we read these things together, requires that there be an I-130 filed on behalf of the children, then why isn't the K-6 gap filler for K-2 visa holders ultra vires? I mean, you can't have it both ways. The plain language can't authorize it in one circumstance and not in the other, can it? Well, it arose in a very different circumstance, Your Honor. And in the case of the K-3s and K-4s, we know because of the statutory language, they already have the I-130 filed. Right? That's part of how you get an I-130. Again, the I-130 doesn't need to be filed on behalf of the K-1, K-2 visa holders. Right. That's why they're different. It's because the agency has said so. Presumably, when it said so, it thought it was acting in a way that was consistent with the statutory language. Oh, my mistake. No, Your Honor, that's incorrect. My mistake. You can't file an I-130 on behalf of the K-1s and K-2s at that point because they're not immediate relatives. They're still fiancés. But the gap filler regulation dispensed with the need for an I-130 petition for the K-2 visa holder so that those children would not have to wait. Right? After they've come to the United States. And after there was a marriage, right? Right. Presumably. Yes. So if the plain language of the statute allows for the K-6 gap filler regulation, then how can the agency be arguing at the same time that that plain language does not allow for a similar automatic adjustment? Because, as I said, we're not talking about similarly situated groups. But we're talking about the same statutory language, aren't we? Not identical language. The A-1A, excuse me, 101-A-15-K defines the fiancé. The fiancé language is different than the spouse language. But it puts the K-2 and K-4 visa holders in subsection 3 in the same category, treating them both in a derivative type of status for those parents depending on the marriage as a result of the marriage. They're defined in relation to their parents. Isn't there a distinction between the way the agency looks at the marriage, that the marriage overseas is one thing, but that there will be greater scrutiny in the marriage if it's conducted in the United States? Because, sadly, there are a lot of fraudulent marriages that are conducted here so people can stay. Is that it? Yes, sir. The whole purpose of 245-D is that these groups get extra scrutiny to protect against fraud. I want to add that this is not. But as I understood it, that's not a particular problem if the marriage is overseas. At least we adjust. Maybe it is. I don't know. Well, that's Congress's policy determination to make. I see my time has expired. I urge you to uphold the regulations as upholding the will of Congress that stepchildren over the age of 18 at the time of the parent's marriage are disfavored. I'd like to go back to a point you just made. You indicated this furthered the goal of preventing fraud. I can understand how the goal of requiring an I-130 petition and the scrutiny of that petition for the alien spouse does that. How does bringing a 19-year-old child of an alien spouse to the United States on a key visa and then sending them back to their home country without their parent or their younger siblings to wait and restart an I-130 process, how does that further the goal of preventing marriage fraud? I don't know that it does. I know that the purpose of that, and, again, we're only talking about aliens over the age of 18 at the time of their parent's marriage. What I'm saying is there was an exception carved out for the case, but it doesn't include petitioners over the age of 18 because Congress disfavors stepchildren. I want to add that, in this case, Sen's mother naturalized in 2006, which means if she had gone back and touched base, she'd be over here now lawfully immigrated. It's only because she refused to go back and then immigrate in the ordinary course without the exception of her K that we find ourselves in this situation here trying to find ambiguous language to invalidate. Are there any other questions? Thank you. I don't have anything else. Thank you. Thank you. I'll just first address the last point made by counsel. When Ms. Sen's mother became a U.S. citizen, it's much easier to say that you can go back and counsel her process and come back than it is in reality because, as recognized by Congress when they enacted the K3 and K4 classification, those wait times are often a year or more. And then there's no guarantee that they would be able to come back. There's potential issues with unlawful presence and waivers that come up, so it's not automatic and it's not unreasonable for her to have remained in the United States and tried to adjust her status here. As far as the first way that we state Ms. Sen can adjust status, I would just point out with respect to the mother's I-130, there is a visa immediately available that was at the time of the immigration court proceedings in the case. So there was nothing in the requirements of 245A that she did not meet. Where would we know that from the record, that an immigrant visa was available? It's referenced at certain points in the record. I don't have the exact citation. So your representation is the record would support the proposition that there was a visa immediately available to Ms. Sen? Yeah, in 2000 and I believe 9 or 10 when she was before the immigration court. I can't remember the exact time. If I could ask you about the minor child language, what's your views of what minor child means under 1255D and whether the presence of that language should bode in your client's favor to demonstrate Congress's intent that as it relates to this group of individuals, that is individuals coming in through the K program, we're using a different age cutoff. Yeah, I mean I think that minor child used in that section of the statute does support our position in the case. The intention in setting all of this up was to allow someone in Ms. Sen's position to come into the United States if she was under the age of 21 because that's what's for a K visa. That's what Congress required. Congress specifically, we can argue that they disfavor stepchildren, but they certainly didn't in this case in allowing them to come as a K. It's only then the only issue becomes the I-130 petition. And for the reasons that I've stated, I don't believe that there needs to be a separate I-130 petition on behalf of the child by the stepparent. I don't think that that's an issue here. I don't think that there needs to be one. We have approved I-130 based on the mother. The reason she can't adjust based on that is the regulation, 245.1I. And as we've stated, that regulation is not consistent with the very statute, 1255D, and it's also entirely inconsistent with congressional intent to require that the K-4 adjust solely on the basis of a petition. And in this case, that could never exist because she came at a time she couldn't get an I-130. You're not asking us to dispense with the I-130 requirement, right? That's not something that the court presumably would be in a position to do. But if we were to agree with your position as to the validity of the regulation, what then would be in place for adjustment of status? Well, what it comes down to is that the I-130 requirement exists for the mother. In this case, Ms. Senn's mother, the person that marries the K petitioner. There does need to be an I-130 filed on behalf of the mother, and the child, in this case Ms. Senn, would be adjusting as long as that I-130 petition was approved. So you still need the I-130 petition for the mother, but I think as the structure of the statute is set up in the legislative history of the statute, it clearly doesn't require that a separate I-130 be filed on behalf of Ms. Senn by her step-parent in this particular case. How could that be, though? How could she get in then? I think that's Judge Cross's point, is how would we be able to reconcile the need to demonstrate she was, the child was Ms. Senn's immediate relative, her married name, he, as an immediate relative. You'd still have to go through the immediate relative process, statutorily. Unless the agency did what it did for the K-1s and K-2s, which was bypassed it. Yeah, and apart from that, we have an I-130, and you don't need to be an immediate relative to adjust status in the United States. Ms. Senn's not an immediate relative on her mother's I-130 petition. She's in Category 1. But she, as far as the other part of it goes with respect to the Ks, the CSA case by the Board recognizes that the K-1 visas weren't a perfect fit for purposes of the 245A adjustment of status. And they created this provision that allowed the people that came in as K-2s between the age of 18 and 21 to still be able to adjust status. But that's only because they created a regulation. So back to Judge Krause's question. If the regulation you're challenging were voided, what is the avenue that Ms. Senn could invoke to remain in the United States and also to remain consistent with what D allowed, which was a limited cutout for admission into the United States if you were a lawful admission on a conditional basis as a result of the marriage. Your proposal is it's as a result of her relationship to her mother. Correct. That's not as a result of the marriage and therefore doesn't D still stand as a roadblock to the relief you seek? No, I would submit that it is as a result. Her adjustment would be as a result of her mother's marriage to the step-parent because that's what's allowing her to come into the United States. So that's been our position is that's why that's not inconsistent with 1255D. But are you asking us to prescribe a certain relief if we were to agree that the statute was invalid or take a position like the Seventh Circuit did? It was up to the agency how to handle at that point the issues around adjustment of status. I mean, we would obviously prefer that the court state that she's eligible for adjustment of status under either such as a K-2 adjusting based on the marriage of her mother to the step-father or that she would be eligible to adjust based on that approved I-130. Now, the board and the immigration court haven't gone into other admissibility issues with respect to the I-130 followed by her mother. The only issues that were addressed were that she's not statutorily eligible under 245A. So we would ask for a remand to allow the board to further consider her other eligibility for adjustment of status. But we would submit that there's nothing in the statute and in the record that precludes her from adjusting status. Judge Greenberg, do you have any other questions for counsel? Not today. Okay. Thank you very much. Counsel, thank you both with your fine arguments and your submissions. We will take this matter under advisement. Please rise.